The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Raymond MUNOZ, Defendant–Appellant.

No.  07CA0697.

Colorado Court of Appeals, Div. II.

Aug. 20, 2009.

Rehearing Denied Oct. 15, 2009.

§ 24–51–1105, C.R.S.2008.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Samuel Santistevan, LLC, Samuel Santistevan, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.*

Defendant, Raymond Munoz, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree murder after deliberation, felony murder, two counts of first degree burglary, three counts of menacing, and two crime of violence counts. We affirm.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

## I. Background

### A. Factual Background

On February 2, 2006, defendant went to the victim's house to visit A.R., a mutual friend of the victim and defendant. Defendant asked to speak to A.R. The victim refused to allow defendant to speak with A.R., and a fight between defendant and the victim ensued. After they exchanged several blows, the fight ended. As defendant was leaving, he threatened the victim, saying, "I'll be back." Defendant also threatened, A.R., saying, "You better watch your back," and, "[A]ll your shit is gone." Defendant had been storing some of A.R.'s belongings at a storage unit, and A.R. interpreted defendant's words to mean that he intended to take her belongings.

The following day, defendant returned to the victim's home. A.R. testified that she, the victim, and two other friends were present. They heard two very loud banging noises on the front door, and immediately thereafter, the door sprung open. Two men entered the victim's house. A.R. recognized one of the men as defendant, and he was carrying a sawed-off shotgun.

Defendant and his accomplice rushed over to the victim, and defendant struck the victim on the head with the shotgun, knocking him to the floor. Defendant then assaulted the victim by thrusting a knife into the side of his chest. The pathologist who conducted an autopsy of the victim testified at trial that the victim died as the result of a stab wound inflicted from the side, which punctured his left lung and heart.

The victim could not be revived and was pronounced dead at the scene. Defendant was apprehended at his apartment building the next day and was taken into custody.

### B. Investigation and Pretrial Motions

Police conducted a search of the victim's home, defendant's car, defendant's apartment, and another apartment in defendant's apartment building in which defendant hid to avoid arrest. The investigators collected a

§ 24–51–1105, C.R.S.2008.

substantial amount of physical evidence, including clothing belonging to defendant soiled with the victim's blood, a large knife thought to be the murder weapon, and six other miscellaneous small and medium-sized knives collected during the police officers' search for the murder weapon.

Police also investigated another crime which they believed was connected to the victim's killing. Earlier on the day of the killing, defendant allegedly broke into nine storage units and stole items from the units. One of the units, which defendant's wife had rented, had contained items belonging to A.R. Defendant allegedly broke into his wife's storage unit, removed A.R.'s belongings, and took them to a basement in a neighboring apartment.

Defendant was charged with first degree murder after deliberation, pursuant to section 18–3–102(1)(a), C.R.S.2008; felony murder, pursuant to section 18–3–102(1)(b), C.R.S.2008; two counts of first degree burglary, pursuant to section 18–4–202(1), C.R.S. 2008; three counts of menacing, pursuant to section 18–3–206(1)(a) and (b), C.R.S.2008; and two crime of violence counts, pursuant to section 18–1.3–406(2)(a)(I)(B), C.R.S.2008.

Before trial, the prosecution moved to admit evidence of defendant's prior acts pursuant to CRE 404(b), including the fight between defendant and the victim the day before the murder and defendant's theft of items belonging to A.R. from his wife's storage unit. At the hearing on the motion, the prosecution argued that testimony about the fight was proper under CRE 404(b) because it was relevant to show intent, plan, and motive to murder the victim. In regard to defendant's alleged theft of items belonging to A.R., the prosecution argued that the evidence should be admitted to prove defendant's motive for the killing, burglary, and menacing.

Defendant argued that the prior acts were not relevant and disputed the prosecution's contention that the evidence would show intent, plan, or motive. Defendant also contended that the prosecution's characterization of his alleged taking of A.R.'s items from the storage unit as a theft was prejudicial because there was no evidence to suggest defendant was not authorized to enter his wife's unit and remove the property.

The court granted the prosecution's motion, reasoning that the fight between defendant and the victim the day before the murder was proper under the rule because it provided evidence of defendant's intent, plan, and motive in the killing of the victim. The court reasoned that the introduction of defendant's alleged theft of items belonging to A.R. from his wife's storage unit was proper under CRE 404(b) because it was evidence of defendant's motive in the killing, burglary, and menacing.

Prior to trial, defendant also moved to sever his case from his co-defendant's. The trial court indicated that it would grant defendant's motion for severance, but expressed doubts about whether defendant's trial could be set on a date within the statutory speedy trial period if the court tried defendant separately from his co-defendant. The court asked defense counsel, "So you are waiving speedy?" Defense counsel responded, "We would, if—yes, I guess we'll go ahead and do that today, if that's how the Court wants to handle that." Subsequently, the trial court severed defendant's case from his co-defendant's and set a trial date beyond the initial statutory speedy trial period.

## C. Trial

At trial, the prosecution called thirty-two witnesses. The prosecution presented a substantial amount of physical evidence and eyewitness testimony in support of its allegation that defendant broke into the victim's home brandishing a weapon and stabbed the victim. The prosecution also presented CRE 404(b) evidence to show defendant's motive for committing the murder, burglary, and menacing, including testimony from a storage facility manager inculpating defendant in the taking of A.R.'s belongings from his wife's storage unit.

During examination of the manager, the prosecutor was careful to inquire only about the theft of items from defendant's wife's storage unit. However, when defense counsel cross-examined the manager, he inquired into whether other units had been broken

into during the episode on February 3. This was the first mention of the entry into the other units. During defense counsel's cross-examination of the manager, the following exchange took place:

Defense counsel: [T]here were nine storage lockers broken into that day, right?

Manager: There were several, I don't recall the exact number.

Defense counsel: This one that belonged to [defendant's wife] was one of them?

Manager: Yes.

A subsequent witness, the police officer who responded to the call concerning the storage units, testified on direct examination that nine units had been burglarized and that it appeared that the perpetrator had cut the locks off the units with a bolt cutter. On cross-examination, defense counsel inquired further into the burglary of the units at the storage facility. The following exchange took place:

Defense counsel: You said nine units were burglarized; is that right?

Police Officer: Yes, sir.

Defense counsel: It looked like maybe a bolt cutter might have cut them, but you are not sure, but something did?

Police Officer: Most of the locks were missing. I only recovered one portion of one lock.

Defense counsel: Do you remember on what unit that was?

. . . .

Police Officer: Yes, it was in front of the door for L6. . . .

After the presentation of evidence, the trial court provided instructions to the jury. The court provided the following instruction on reasonable doubt:

Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all of the evidence, you are then convinced that the defendant is guilty beyond a reasonable doubt.

The burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged.

Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or lack of evidence, in the case. It is a doubt which is not a vague, speculative, or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

If you find from the evidence that each and every element has been proven beyond a reasonable doubt, you *will* find the defendant guilty. If you find from the evidence that the prosecution has failed to prove any one of more of the elements beyond a reasonable doubt you *will* find the defendant not guilty.

(Emphasis added.)

For each of the charged offenses, the court set out the elements of the offense and provided the following instruction:

After considering all of the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you *should* find the defendant guilty of [the offense charged].

After considering all of the evidence, if you decide the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt, you *should* find the defendant not guilty of [the offense charged].

(Emphasis added.)

All of the above instructions are in the form provided by the Colorado pattern criminal jury instructions. CJI–Crim. 3:04, 9:01, 9:02, 10:15, 14:01 (1983).

The jury returned a verdict of guilty on all counts. The trial court sentenced defendant to life in prison for the murder count, twenty years for each of the two burglary counts, and three years on each of the three menacing counts, all to be served consecutively. This appeal followed.

## II. Jury Instructions

### A. Overview and Standard of Review

Defendant contends the trial court erroneously instructed the jury on the reasonable

doubt standard. He argues that the trial court's use of the word "should" in the instruction for each offense impermissibly lowered the prosecution's burden of proof. We disagree. We find no error in the trial court's reasonable doubt instructions.

The instructions were submitted to the jury without objection to the challenged language. Therefore we review under a plain error standard. *People v. Miller,* 113 P.3d 743, 749 (Colo.2005). To constitute plain error, the instruction must "so undermine[ ] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001) (quoting *Walker v. People,* 932 P.2d 303, 311 (Colo. 1997)).

In our review of an instruction, we examine the language at issue in context with the rest of the instruction and in the context of all the instructions given to the jury. *Victor v. Nebraska,* 511 U.S. 1, 16, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (noting that the language being objected to cannot be "sequestered from its surroundings" and finding other instructions useful in analyzing any impact the disputed language may have had).

### B. The Reasonable Doubt Instruction

The reasonable doubt standard is central to the American system of criminal procedure. *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard is a primary instrument for implementing the principle that all persons are presumed to be innocent unless proven guilty. *Id.* The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt has its basis in both the Fifth and Sixth Amendments. *Sullivan v. Louisiana,* 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Under the Fifth Amendment, the prosecution bears the burden of proving that the defendant committed all of the elements of each charged offense beyond a reasonable doubt. *Id.* at 277–78, 113 S.Ct. 2078. The requirement applies to both federal and state criminal proceedings. *Id.*

To be valid, a reasonable doubt instruction must instruct the jury that it *may* return a guilty verdict only if sufficient proof has been submitted to satisfy the standard. *See Cage v. Louisiana,* 498 U.S. 39, 41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (finding a reasonable doubt instruction to be constitutionally defective because under the instruction the jury may have reasonably believed it was allowed to render a guilty verdict based on proof below what is required under the Due Process Clause). While instructions providing the general contours of the reasonable doubt standard are constitutionally mandated, states are free to formulate their own versions of the standard in drafting instructions to inform the jury of the meaning of reasonable doubt and how to apply the standard. *Victor,* 511 U.S. at 5, 114 S.Ct. 1239 (stating that the Constitution does not require any particular form of words in informing the jury about the reasonable doubt standard). The United States Supreme Court has no supervisory power over the state courts, and state courts are free to draft their own versions of instructions on reasonable doubt so long as those instructions conform to the minimum requirements under the Due Process Clause and the Sixth Amendment. *Id.* at 17, 114 S.Ct. 1239.

A trial court's instruction on the reasonable doubt standard satisfies the requirements of due process if the instruction apprises the jury of the necessity that the defendant's guilt be proved beyond a reasonable doubt, and no particular form is required. *Id.* at 5, 114 S.Ct. 1239. The allegedly defective instruction should not be read in isolation but should be considered in context with all the instructions provided to the jury. *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

In determining whether a challenged instruction on the reasonable doubt standard satisfies the Due Process Clause, a reviewing court should ask " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates' the Constitution." *Id.* at 72, 112 S.Ct. 475 (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

Applying these standards, divisions of this court recently upheld the pattern jury instruction on reasonable doubt, CJI–Crim 3:04, but the cases did not address the specific issue raised here. *People v. Robb*, 215 P.3d 1253, 1262–63 (Colo.App.2009); *People v. Rubio*, 222 P.3d 355, 363–64 (Colo.App. 2009).

### C. Analysis

■ Here, the trial court's instructions clearly informed the jury of its obligation to find defendant not guilty of the charged offenses if the prosecution did not prove every element of each of the charged offenses beyond a reasonable doubt.

Defendant argues that the use of the word "should" in the court's instructions to the jury left the issue of whether the prosecution proved defendant's guilt beyond a reasonable doubt to the jury's discretion rather than informing the jury that it was obligated to return a not guilty verdict if the prosecution failed to present sufficient proof. Defendant characterizes the word "should" as a permissive request rather than a mandatory command and argues that the use of the word rendered the instructions erroneous under the Due Process Clause. Further, defendant contends that the instructions unconstitutionally lowered the prosecution's burden of proof. Consequently, defendant argues, his conviction must be reversed.

Because we conclude that the common meaning of "should" conveys an obligatory command and not a permissive request and after considering the use of the term in the context of all of the court's instructions, we conclude that the instructions using that word adequately informed the jury of its obligation to adhere to the reasonable doubt standard in deciding defendant's guilt. Further, when the instructions are read in context with the court's general instruction on reasonable doubt, it is evident that the jury was adequately informed of its duty to decide the case based on the law and the evidence offered at trial.

Initially, we note that the challenged instruction was authorized for use by the supreme court in 1983. *See* CJI–Crim page V. We also note that it has been used in many,

if not most, criminal trials since that time without a challenge in the appellate courts.

"Should" is "used ... to express duty, obligation, propriety, or expediency." *Webster's Third New International Dictionary* 2104 (2002). Courts interpreting the word in various contexts have drawn conflicting conclusions, although the weight of authority appears to favor interpreting "should" in an imperative, obligatory sense. A number of courts, confronted with the question of whether using the word "should" in jury instructions conforms with the Fifth and Sixth Amendment protections governing the reasonable doubt standard, have upheld instructions using the word. In the courts of other states in which a defendant has argued that the word "should" in the reasonable doubt instruction does not sufficiently inform the jury that it is bound to find the defendant not guilty if insufficient proof is submitted at trial, the courts have squarely rejected the argument. They reasoned that the word "conveys a sense of duty and obligation and could not be misunderstood by a jury." *See State v. McCloud*, 257 Kan. 1, 891 P.2d 324, 335 (1995); *see also Tyson v. State*, 217 Ga.App. 428, 457 S.E.2d 690, 691–92 (1995) (finding argument that "should" is directional but not instructional to be without merit); *Commonwealth v. Hammond*, 350 Pa.Super. 477, 504 A.2d 940, 941–42 (1986).

Notably, courts interpreting the word "should" in other types of jury instructions have also found that the word conveys to the jury a sense of duty or obligation and not discretion. In *Little v. State*, 261 Ark. 859, 554 S.W.2d 312, 324 (1977), the Arkansas Supreme Court interpreted the word "should" in an instruction on circumstantial evidence as synonymous with the word "must" and rejected the defendant's argument that the jury may have been misled by the court's use of the word in the instruction. Similarly, the Missouri Supreme Court rejected a defendant's argument that the court erred by not using the word "should" in an instruction on witness credibility which used the word "must" because the two words have the same meaning. *State v. Rack*, 318 S.W.2d 211, 215 (Mo.1958).

In applying a child support statute, the Arizona Court of Appeals concluded that a legislature's or commission's use of the word "should" is meant to convey duty or obligation. *McNutt v. McNutt*, 203 Ariz. 28, 49 P.3d 300, 306 (2002) (finding a statute stating that child support expenditures "should" be allocated for the purpose of parents' federal tax exemption to be mandatory).

In other cases, the word "should" in contexts other than jury instructions has been held to have a permissive meaning. Other divisions of this court, in interpreting the Code of Penal Discipline, have held that the word "should" was not mandatory. *Woolsey v. Colo. Dep't of Corrections*, 66 P.3d 151, 154 (Colo.App.2002); *Washington v. Crowder*, 12 P.3d 857, 859 (Colo.App.2000). These cases are distinguishable because they concern very short procedural time lines that do not implicate constitutional rights or standards for deciding alleged violations of the penal code. Another division of this court concluded that "should" in an urban renewal redevelopment plan gave discretion and was not mandatory. *Sheridan Redevelopment Agency v. Knightsbridge Land Co.*, 166 P.3d 259, 264 (Colo.App.2007). The opinion recognized that "should in some instances connotes mandatory language". This case is distinguishable because the term "should" was held to be discretionary where it was used in the same paragraph with "will" and "shall" that were clearly designating mandatory provisions.

Other courts, in their interpretation of the word "should" in statutes that use the words "should" and "shall" in the same statute, have reasoned that a legislature's use of the word is meant to convey that the decision-maker has discretion in the ultimate outcome. *See Qwest Corp. v. F.C.C.*, 258 F.3d 1191, 1200 (10th Cir.2001) (observing that in a statute in which the words "shall" and "should" are both used, the word "should" prescribes a recommended course of action); *Tennant v. Roys*, 44 Wash.App. 305, 722 P.2d 848, 853 (1986) (finding the word "should" in a statute to mean that the directive was advisory, in part because of the legislature's use of the word "shall" in the same statute).

The word "should" in sentencing guidelines has been held to be permissive. *United States v. Maria*, 186 F.3d 65, 70 (2d Cir.1999) (interpreting a sentencing guideline containing the word "should" as discretionary); *State v. Stamper*, 615 So.2d 1359, 1365 (La. Ct.App.1993) (finding that a court was free to impose consecutive sentences where a sentencing guideline provided that concurrent sentences "should" be imposed). These holdings can be distinguished because sentencing is an inherently discretionary function, and courts have wide latitude in exercising that discretion. *People v. Fuller*, 791 P.2d 702, 708 (Colo.1990); *People v. Watkins*, 684 P.2d 234, 239 (Colo.1984). Therefore, a sentencing guideline would generally be interpreted to give discretion unless a contrary intent was clearly stated.

We conclude that here the instructions on reasonable doubt properly instructed the jury that it was obligated to find defendant not guilty if the prosecution failed to prove defendant's guilt beyond a reasonable doubt. Our conclusion is supported by the fact that the reasonable doubt instruction for each of the offenses must have been understood by the jury in context with the other instructions given. *See People v. Rosales*, 134 P.3d 429, 434 (Colo.App.2005) (looking to the jury instructions as a whole rather than viewing the challenged instruction in isolation in deciding that the instruction was proper). Here, the court's primary instruction on reasonable doubt, given before the instructions on each of the offenses, instructed the jury that it "*will* find the defendant not guilty" if the prosecution failed to meet its burden of proof. (Emphasis added.)

In addition, the court's first instruction provided that the jurors "must follow all of the rules" as explained to them by the court and admonished the jurors that they must follow the rules even if they disagreed with them or did not understand their rationale. *See* CJI–Crim. 3:01. With all these instructions in mind, and assuming the jurors followed the instructions, we conclude the jurors could not have interpreted the word "should" to mean that they could base their decision on their own discretion or that they

were free to find defendant guilty even if the prosecution did not meet its burden of proof.

Finally, our conclusion is supported by the fact that the prosecutor, in his closing argument, acknowledged the prosecution's burden to prove every element of each charge beyond a reasonable doubt.

Accordingly, we find there was no reasonable likelihood that the jurors applied the challenged instructions in a way that violates the Constitution. *See Estelle v. McGuire*, 502 U.S. at 71, 112 S.Ct. 475; *People v. Sherman*, 45 P.3d 774 (Colo.App.2001).

### III. Trial Court's Evidentiary Rulings

#### A. Standard of Review

Trial courts are given wide discretion in deciding whether to admit evidence, including whether to admit evidence of other acts under CRE 404(b). *Masters v. People*, 58 P.3d 979, 996 (Colo.2002); *People v. Cousins*, 181 P.3d 365, 370 (Colo.App.2007). We review a trial court's evidentiary ruling under an abuse of discretion standard and will only disturb the ruling if it is manifestly arbitrary, unreasonable, or unfair. *Masters*, 58 P.3d at 996; *Cousins*, 181 P.3d at 370.

In order to preserve an issue for appeal, a party must provide the trial court with a specific and definite objection. CRE 103(a)(1). We review errors preserved by a proper objection under a harmless error standard. *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001). Under this standard, unless there is a reasonable probability that the error contributed to the defendant's conviction, the error will be disregarded. *Id.*

#### B. Evidence of the Burglaries

Defendant contends the trial court erroneously admitted evidence of his burglary of units at the storage facility, including the burglary of his wife's unit containing A.R.'s belongings, under CRE 404(b). In addition, defendant argues that, even if the trial court properly admitted evidence of his taking of A.R.'s belongings from his wife's storage unit, the prosecution's evidence of his burglary of other units at the storage facility was prejudicial and improper under CRE 404(b). We disagree with both of these contentions.

#### 1. Burglary of Wife's Storage Unit

Defendant objected to the prosecution's introduction of evidence about his alleged burglary of his wife's storage unit before trial at the CRE 404(b) hearing. Thus, defendant preserved his objection to the introduction of this evidence, and we review the trial court's ruling under a harmless error standard.

■ Because we conclude that the trial court properly found defendant's taking of A.R.'s property from his wife's storage unit to be admissible under CRE 404(b) as evidence of his motive to commit the charged offenses, we find no error in the trial court's ruling.

CRE 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

■ Before admitting evidence of uncharged misconduct under CRE 404(b), a trial court must analyze the evidence under CRE 104(a) and admit it only if the court is satisfied by a preponderance of the evidence that (1) the CRE 404(b) acts occurred; and (2) the defendant committed the acts. *People v. Garner*, 806 P.2d 366, 373 (Colo.1991).

If this threshold requirement is met, then the court must apply a four-part test under which CRE 404(b) evidence is admissible only if (1) it relates to a material fact; (2) it is logically relevant; (3) the logical relevance is independent of the inference prohibited by CRE 404(b); and (4) its probative value is not substantially outweighed by the risk of unfair prejudice, under CRE 403. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990).

Here, there was sufficient evidence for the trial court to find by a preponderance of the evidence that defendant had, in fact, broken into his wife's storage unit and taken A.R.'s belongings. The storage facility manager identified defendant as the individual seen entering the facility on the surveillance video shortly before the break-in occurred. Further, defendant's neighbor testified that on the day of the murder, defendant brought over boxes containing some of A.R.'s belongings to store in his basement. Also, the day before the victim was murdered, defendant threatened to take A.R.'s belongings by telling her they were "gone."

The trial court also properly found that the evidence satisfied the four-part test set out in *Spoto*. The court reasoned that the prosecution's offers of proof at the hearing had set out an evidentiary hypothesis which met the requirements under *Spoto*. Our review of the transcripts from the hearing persuades us that the court correctly concluded that the evidence was admissible under the *Spoto* test.

First, defendant's breaking into his wife's storage unit in order to take A.R.'s belongings relates to a material fact in the case, defendant's motive for committing the crimes and his plan to carry out the threats he had made to A.R. and the victim. The evidence is logically relevant to those issues. There was evidence in the record that defendant previously had an intimate relationship with A.R. and may have been jealous of her relationship with the victim. Thus, defendant's theft of A.R.'s property is evidence of his motive for committing the crimes against A.R. and the victim. *See Warford v. People*, 43 Colo. 107, 112, 96 P. 556, 558 (1908) (it is always proper to show motive for committing the crime).

Second, the theft of A.R.'s belongings is relevant for reasons other than to show defendant's bad character or his propensity for committing bad acts. The theft was evidence of defendant's motive for committing the charged conduct.

Last, the probative value of the evidence is not outweighed by any unfair prejudicial effect. The evidence shows defendant's motive and a plan to carry out the threats made to A.R. and the victim after fighting with the victim on February 3, 2006. *See People v. Rath*, 44 P.3d 1033, 1043 (Colo.2002) (court must give the evidence the maximum probative value and the minimum unfair prejudicial value).

Accordingly, we find that the court correctly concluded that evidence of defendant's taking of A.R.'s belongings could be admitted under CRE 404(b).

### 2. Burglary of Other Storage Units

Defendant also argues that the court improperly allowed evidence of his alleged theft from other units at the storage facility. However, defendant raised this issue on cross-examination of the storage facility manager before the prosecution asked any questions about it. Because defendant invited this testimony by first raising the issue, we decline to address his contention that the trial court erred by allowing the testimony. Defendant cannot complain of any error that resulted from testimony he himself elicited. *See People v. Robinson*, 874 P.2d 453, 461–62 (Colo.App.1993) (finding that because defense counsel first asked questions to elicit the hearsay at issue, defendant invited any error that resulted).

Similarly, we do not conclude that the prosecution's later examination of a witness about the other burglaries to be grounds for reversal. Any error resulting from this testimony was harmless. We cannot discern how this later testimony could have had any unfair prejudicial effect on the jury when the earlier witness had already provided the same information on cross-examination by defense counsel. Thus, any error resulting from the prosecution's eliciting of testimony about the burglaries of the other units was harmless. *See id.* (finding that later testimony which elicited additional hearsay statements was harmless because it was simply cumulative of the hearsay statements defendant had already introduced).

### C. Admission of Defendant's Knives

Defendant characterizes the admission of his knives into evidence as impermissible CRE 404(b) evidence. Because we conclude that no testimony or evidence in the record suggests that the knives were introduced to prove other bad acts committed by

defendant and no testimony was elicited for the purpose of showing that the knives demonstrated defendant's bad character, we are unable to discern how the admission of the knives implicates CRE 404(b). Hence, we conduct our inquiry into whether the knives were properly admitted as we would for any other evidence. *See People v. Greenlee,* 200 P.3d 363, 368 (Colo.2009) (no need to consider an alternative theory of relevance where evidence is admissible under general rules of relevancy).

Defendant argues that the admission into evidence of any knife other than the murder weapon was improper and unfairly prejudicial because the other knives were not used during the incident and thus were not relevant to the case. Because defendant did not object to the admission of the other knives into evidence, we review their admission under a plain error standard. *See People v. Hall,* 107 P.3d 1073, 1077 (Colo.App.2004) (observing that if a defendant neglects to object to testimonial evidence during trial, any alleged error will be reviewed under a plain error standard). Defendant does not describe which knives were prejudicial or state with any particularity how their introduction prejudiced him.

To the extent that admitting the knives may have been error, it certainly does not rise to the level of plain error. The prosecution spent a substantial amount of time informing the jury about law enforcement's investigation of the crime, including introducing the knives investigators found while searching for the murder weapon. Thus, the knives were admitted in the process of showing the extent of the investigation, and even if the trial court erred by admitting the evidence, the error was not so obvious or egregious as to constitute plain error.

Further, the knives were not relied upon in argument or suggested as support for the prosecution's case. The only other reference in the record to defendant's knives, apart from the knife used to commit the murder, arose when the prosecution sought to elicit testimony from defendant's wife about her efforts to obstruct the police investigation into the murder.

Finally, there was nothing particularly incriminating or inflammatory about the knives admitted into evidence. Most of the knives were ordinary pocketknives with small, two-to three-inch blades. Although one investigator testified that he believed that one of the knives had a drop of blood on it, he did not specify whether the blood was human blood or animal blood and, apart from his testimony on cross-examination that the knife had not been sent for forensic testing, no further mention was made of the knife. In view of the very limited use to which the knives were put at trial, we do not find that their introduction undermined the fundamental fairness of defendant's trial. *See People v. Vasquez,* 155 P.3d 588, 594 (Colo.App. 2006). Therefore, we do not find the trial court's admission of the knives warrants reversal.

## IV.   Right to a Speedy Trial

■ Defendant argues he was denied his right to a speedy trial. More specifically, he contends he did not waive his right to a speedy trial and that, consequently, the trial court's continuance of the trial outside of the prescribed statutory period unconstitutionally delayed the proceedings. Any waiver made by counsel on his behalf, he argues, is invalid because he did not waive his right voluntarily, intelligently, or knowingly. We reject his argument.

■ Under section 18–1–405(5), C.R.S.2008, a defendant must move to dismiss before trial in order to receive relief for a trial court's failure to comply with the statutory speedy trial rule. If a defendant fails to do so, the defendant waives the right. *Id.; People v. McMurtry,* 122 P.3d 237, 243 (Colo.2005). Here, at no point before or during his trial did defendant complain of delay or that he had been denied his right to a speedy trial. The constitutional right to a speedy trial must be raised in the trial court before an appellate court will consider it on appeal. *Id.*

The judgment is affirmed.

Judge CASEBOLT and Judge MILLER concur.