2014 COA 33

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Steven Matthew COOK, Defendant–Appellant.**

**Court of Appeals No. 10CA1989**

Colorado Court of Appeals, Div. II.

Announced March 27, 2014

Arapahoe County District Court No. 04CR3080, Honorable Michael J. Spear, Judge, Honorable Valeria N. Spencer, Judge

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

GarciaLaw, LLC, J. Alberto Garcia, Broomfield, Colorado, for Defendant–Appellant

Opinion by JUDGE CASEBOLT

¶ 1 Defendant, Steven Matthew Cook, appeals the judgment of conviction and sentences entered on jury verdicts finding him guilty of twenty-nine counts of sexual exploitation of children (sale/publication, possession for distribution, and inducement or enticement to make exploitative material); unlawful sexual contact—coercion of a child; sexual assault on a child; attempted sexual assault on a child; indecent exposure to one under fifteen years of age; sexual assault on a child by one in a position of trust; sexual assault on a child—pattern of abuse; sexual assault on a child by one in a position of trust—pattern of abuse; and crime of violence. The victims were defendant's daughter, the daughter of his former girlfriend, and other unnamed children. We affirm.

I. Procedural History and Background

¶ 2 Defendant and his wife dissolved their marriage when their daughter, C.C., was two years old. After the divorce, defendant moved in with a girlfriend and her four-year-old daughter, S.G., in Arapahoe County. Defendant lived in the girlfriend's home for approximately five years, during which C.C. visited every other weekend. Defendant then moved out of the girlfriend's home to live with his ex-wife and C.C., but that arrangement ended shortly thereafter.

¶ 3 One month after defendant had last moved out, seven-year-old C.C. disclosed that defendant had gone to the basement of the home to view naked women on the computer and masturbate. During a video-recorded forensic interview, C.C. made the same allegations and, although she at first denied it, she later stated that defendant sometimes took her to the basement and asked her to look at the pictures with him. C.C. denied that defendant had touched her and denied that he asked to view her without clothing.

¶ 4 C.C. also disclosed that defendant had taken S.G. to the basement and had her watch computer videos of naked women, stating that S.G. had told her about it. C.C. also observed defendant showing the computer to S.G. and saw S.G. touching defendant's genitals.

¶ 5 In a second forensic interview, C.C. made some contradictory statements, but again stated that defendant would watch naked women on the computer and masturbate. She elaborated that defendant would take pictures of his genitals with a web camera. She also disclosed for the first time that defendant had patted or rubbed her genitals, made her take off her underwear, and had taken pictures of her with her vagina ex-

posed using the computer camera. In both interviews, C.C.'s disclosures concerned incidents that had occurred in homes located in Boulder and Arapahoe Counties. But she was not clear about what acts had happened in each locale.

¶ 6 S.G. also participated in a recorded forensic interview and stated that defendant had taken her to the basement and had taken pictures of her, but she stated defendant had not touched her. S.G. was nine years old at the time of the disclosures and lived with defendant and her mother in Arapahoe County during the assaults.

¶ 7 Police executed a search warrant for the four computers to which defendant had access during the relevant period. They found many images of child and adult pornography on all the computers, but found no images of C.C. or S.G. Police found no evidence that images of the two girls had been transmitted over the internet.

¶ 8 The prosecution charged defendant in Arapahoe County with eighteen counts of sexual offenses and crime of violence concerning C.C., S.G., and unnamed victims occurring between October 1999 and March 2004.

¶ 9 Both C.C. and S.G. testified at trial. C.C.'s testimony was similar to her disclosures in the interviews, but she did not remember in which house (in Boulder or Arapahoe County) she had resided when defendant rubbed her, and could not remember defendant taking pictures of himself or her with his web camera. S.G. testified that defendant had taken her to the basement and made her take off her pants and show her vagina, which he would show on the internet. She said defendant would touch himself during these times and she had seen him masturbate several times. Other times he would ask her to touch his penis, but she refused, and also said "no" when he asked if he could touch her.

¶ 10 The prosecution also presented evidence that semen containing defendant's DNA had been found on the basement wall where the girls had alleged defendant had looked at pornography and had taken pictures of them in various states of undress.

¶ 11 Charges had previously been brought against defendant in Boulder County for acts against C.C. occurring there. At trial, the acts were proffered and admitted under CRE 404(b).

¶ 12 The jury acquitted defendant of sexual assault and incest concerning C.C. It also acquitted defendant of one of the sexual exploitation charges, having an unnamed victim. The jury convicted defendant of the remaining fifteen charges. The trial court sentenced him to an aggregate term of forty years to life in the custody of the Department of Corrections.

¶ 13 Defendant appealed the judgment. A division of this court vacated his convictions and remanded for a new trial. *People v. Cook*, 197 P.3d 269, 274–77 (Colo.App.2008).

¶ 14 In preparation for retrial, the prosecution conducted interviews with the victims, during which S.G. disclosed new instances of sexual assault. She told the interviewers and the prosecutor that she had not previously disclosed these instances of abuse because defendant had threatened to kill her mother, and she feared him.

¶ 15 The prosecution obtained a warrant to re-search defendant's four computers for additional pornographic images using technological methods that were not available before the first trial. They recovered deleted sexual images of S.G. and additional pornographic images. Based on the new allegations by S.G. and the newly recovered images on defendant's computers, the prosecution moved to add fourteen additional counts to the information. The court granted the motion.

¶ 16 Between the remand in November 2008 and the retrial in April 2010, defense counsel asked for and received three continuances to prepare the case. The trial court denied a request for a fourth continuance made three days before trial.

¶ 17 The prosecution retried defendant on the fifteen original charges for which he had been previously convicted, including sexual exploitation and indecent exposure charges concerning C.C., and the fourteen added charges. Before retrial, defense counsel moved to pierce the rape shield statute. De-

fendant also objected under CRE 404 to the prosecution using evidence of sexual assaults on C.C. from defendant's Boulder County case. The court denied the rape shield motion and allowed the evidence from the Boulder County case.

¶ 18 C.C. and S.G. testified at the second trial and videos of their 2004 and 2009 interviews were admitted into evidence. Both girls were thoroughly cross-examined on motive, bias, and inconsistencies in their statements. S.G., in particular, was questioned concerning her new revelations and motive for revealing the additional assaults years later.

¶ 19 At the second trial, defendant sought to show that R.R., S.G.'s older half-brother, was an alternate suspect on the sexual exploitation counts because he had assaulted C.C. on one occasion, had access to one or more of the computers, and may have been home from college during one of the relevant periods. The court rejected the evidence.

¶ 20 The jury at the second trial convicted defendant on all counts. The trial court imposed the same aggregate length of sentence of forty years-to-life on the retried charges that defendant had received after the first trial. On the new charges, according to the mittimus, the court sentenced defendant to additional consecutive terms of fifty-two years to life, for an aggregate total of ninety-two years to life. This appeal followed.

## II. Amending the Information

¶ 21 Defendant first contends that the trial court erred in permitting the prosecution to add fourteen additional counts on remand following his successful appeal. He asserts that the addition of those counts constituted punishment for successfully prosecuting his prior appeal, which violated his due process rights and chilled his right to direct appeal. We disagree.

### A. Standard of Review

■ ¶ 22 A trial court has discretion to permit the information to be amended before trial, and we will not disturb its decision absent an abuse of that discretion. Crim. P. 7(e); *People v. Al–Yousif,* 206 P.3d 824, 830

(Colo.App.2006) (citing *People v. Wright,* 678 P.2d 1072, 1074 (Colo.App.1984)). However, when, as here, the issue involves amendment of the information on remand following a successful appeal, due process rights are implicated. *See People v. Williams,* 916 P.2d 624, 626–27 (Colo.App.1996). Hence, we will review the issue as a mixed question of fact and law, giving deference to the trial court's factual findings as long as they are supported by the record, and reviewing the court's legal conclusions de novo. *See id.* (concluding that the trial court's findings of fact were supported by the record and its conclusion correctly applied the pertinent law).

### B. Applicable Law

■ ¶ 23 In *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court held that the constitutional requirement of due process restricts a trial court's ability to impose a greater sentence on remand following a successful appeal of a defendant's conviction. *See People v. Montgomery,* 737 P.2d 413, 416 (Colo.1987); *accord People v. Woellhaf,* 199 P.3d 27, 31 (Colo.App.2007). However, neither double jeopardy nor equal protection principles create an absolute bar to imposing a more severe sentence upon conviction after retrial. *Williams,* 916 P.2d at 626 (citing *Pearce,* 395 U.S. at 725, 89 S.Ct. 2072).

■ ¶ 24 The Supreme Court in *Pearce* ruled that vindictiveness against a defendant for having exercised his appellate rights must play no part in the sentence he receives upon reconviction. *Pearce,* 395 U.S. at 725, 89 S.Ct. 2072. To that end, when a trial court imposes a more severe sentence on remand, the court must affirmatively state its reasons based on objective information concerning the defendant's conduct occurring after the original sentencing proceeding. *Id.* at 726, 89 S.Ct. 2072. Otherwise, a presumption arises that the sentencing court had a vindictive purpose, and the prosecution must proffer evidence to overcome this presumption. *Woellhaf,* 199 P.3d at 31.

¶ 25 In *Alabama v. Smith,* 490 U.S. 794, 800, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Supreme Court further elaborated that

the presumption of vindictiveness arises when the circumstances show a "reasonable likelihood" that the increased sentence was improperly motivated. *See also Woellhaf,* 199 P.3d at 31. The Court later clarified that a resentencing court may properly rely on *any* relevant information obtained since the first sentencing, but it must base an increased sentence on information unknown at the time of the first sentencing. *See Smith,* 490 U.S. at 801, 109 S.Ct. 2201 (after the defendant's guilty plea was overturned on appeal, an increased sentence was properly imposed after reconviction at trial because more information relevant to sentencing was available after the trial); *see also Texas v. McCullough,* 475 U.S. 134, 143–44, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) (an increased sentence was properly imposed where, on retrial, two witnesses testified who had not testified at the first trial, and the trial court learned that the defendant had been released from prison four months before committing the offense).

¶ 26 In *Blackledge v. Perry,* 417 U.S. 21, 28–29, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court applied the same rationale to a prosecutor's decision to add charges. It held that additional charges could not be filed following a defendant's successful pursuit of an appeal unless new evidence supported their filing. *Id.* at 29 n. 7, 94 S.Ct. 2098.

¶ 27 Colorado courts have similarly held that, if a more severe sentence is imposed on resentencing, the record must contain additional information, unknown at the time of the first sentencing, which warrants an increased sentence. *Compare People v. Walters,* 802 P.2d 1155, 1155–56 (Colo.App.1990) (where the prosecution knew of the factual basis for counts charging the defendant as a habitual criminal prior to the first trial but failed to timely move to add them, the trial court properly refused to impose an increased sentence based on the defendant's conviction on those counts on retrial), *with Williams,* 916 P.2d at 626–27 (where the factual basis for habitual criminal counts added on retrial was "unknown to the prosecutor before the original trial" and "could not have been known," the trial court properly imposed an increased sentence based on the

defendant's conviction on those counts); *see also People v. Calloway,* 42 Colo.App. 213, 214, 591 P.2d 1346, 1347 (1979) (reversing increased sentence imposed after retrial because "the record contain[ed] no information which would warrant the imposition of an increased sentence").

### C. Application

¶ 28 Here, the prosecution moved to add fourteen counts to the information on remand. The prosecution offered evidence demonstrating that the additional counts were based on new evidence; specifically, new disclosures from S.G. and pornographic images of S.G. and other children retrieved by use of new technological methods from one of defendant's four computers.

¶ 29 At the hearing on this issue, one of the detectives involved in the case testified concerning the new allegations made by S.G. and her statement that she had not previously disclosed the incidents of sexual abuse because she was afraid of defendant; that defendant had threatened her mother; and that she was so much younger at the time of the first trial that she had believed defendant could carry out his threats. The court also viewed the interview in which S.G. disclosed the additional acts of abuse.

¶ 30 The detective further testified that a forensic computer analyst had represented that he might be able to retrieve new evidence from defendant's computers using new technology, and it was this new technology that had revealed pornographic photos of S.G. and other children.

¶ 31 The trial court found, based on the testimony of the detective and S.G.'s later interview, that there was no vindictiveness on the part of the prosecution to retaliate against defendant.

¶ 32 We agree with the trial court's conclusion. The information that formed the basis of the prosecution's new charges could not have been known to the prosecution before the first trial. S.G.'s prior disclosures were incomplete and the technology the prosecution's expert used to recover photos of S.G. and other children did not exist before the first trial. Because the record supports the

trial court's findings that the prosecution could not have known about the newly presented evidence before the first trial, the prosecution offered proof to overcome any presumption of vindictiveness, and the court applied the correct legal standard, we conclude that the court properly allowed the additional counts to be added to the information. *See Williams,* 916 P.2d at 626–27.

### III.  Rape Shield and Alternate Suspect Evidence

¶ 33 Defendant asserts that the trial court erred in denying his motion to pierce the rape shield statute and thereby denied him the opportunity to present evidence of R.R. as an alternate suspect.  We disagree.

### A.  Standard of Review

¶ 34 We review a trial court's evidentiary rulings, including its determination of admissibility under the rape shield statute, for an abuse of discretion. *People v. Melillo,* 25 P.3d 769, 772 (Colo.2001).  We will uphold the court's evidentiary rulings unless they are manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *People v. Harris,* 43 P.3d 221 (Colo.2002); *see also People v. Muniz,* 190 P.3d 774, 781 (Colo. App.2008); *People v. Kyle,* 111 P.3d 491, 496 (Colo.App.2004).

### B.  Applicable Law

¶ 35 The right to confront and cross-examine witnesses and present a defense is constitutionally guaranteed.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, sec. 16.

¶ 36 The purpose of the rape shield statute is to protect sexual assault victims from humiliating public fishing expeditions into their past sexual conduct, unless it is shown that the evidence is relevant to some issue in the case. *Kyle,* 111 P.3d at 496.

¶ 37 The rape shield statute creates a presumption that evidence relating to a rape victim's sexual conduct is irrelevant to the proceedings. § 18–3–407, C.R.S.2013.  Prior sexual victimization is considered "sexual conduct" under the rape shield statute. *Kyle,* 111 P.3d at 496.

¶ 38 The statutory presumption of irrelevance does not apply to (1) evidence of the victim's or witness's prior or subsequent sexual conduct with the actor or (2) evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered to show that the acts charged were or were not committed by the defendant. § 18–3–407(1)(a), (b), C.R.S.2013. If the evidence does not fall within one of these exceptions, the presumption of irrelevance can nevertheless be rebutted if the defendant offers sufficient proof that the evidence is relevant to a material issue in the case. § 18–3–407(2); *Kyle,* 111 P.3d at 497. Evidence proffered under section 18–3–407(2) is subject to CRE 401 relevancy and CRE 403 prejudice limitations. *Kyle,* 111 P.3d at 497.

¶ 39 In presenting a defense, a defendant may present evidence of an alternate suspect. *See, e.g., People v. Salazar,* 2012 CO 20, ¶ 14, 272 P.3d 1067; *People v. Flowers,* 644 P.2d 916, 918 (Colo.1982); *Muniz,* 190 P.3d at 780.  However, this right is limited by rules of evidence prohibiting the introduction of irrelevant evidence and relevant evidence whose probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or potential to mislead the jury. *Salazar,* ¶ 17; *Muniz,* 190 P.3d at 780.  Thus, a trial court may exclude evidence of an alternate suspect that " 'has only the most minimal probative value, and which requires a jury to engage in undue speculation as to the probative value of that evidence.' " *Salazar,* ¶ 17 (quoting *People v. Welsh,* 80 P.3d 296, 307 (Colo.2003)).

¶ 40 Where a defendant seeks to introduce alternate suspect evidence to show motive and opportunity, there must be proof that the alternate suspect committed an act directly connecting him to the crime. *Id.* at ¶ 21.  And where the alternate suspect evidence seeks to challenge the identity of the perpetrator, the alternate suspect's prior act or crime must be similar to the present crime to be relevant and admissible. *Id.* at ¶ 22.

## C. Application

¶ 41 In her 2009 interview, C.C. disclosed that R.R., S.G.'s older half-brother, had once come into her room at night and touched her vagina. C.C. was very clear that this happened only once. In a police interview, R.R. denied touching C.C., but admitted that he had seen child pornography on one of the computers in his home.

¶ 42 Before retrial, defense counsel moved to pierce the rape shield statute based on C.C.'s allegation against R.R. In that motion, defendant argued that C.C. and S.G. had obtained their "knowledge, belief, and understanding of sexual acts and anatomy" from R.R. The defense further argued the girls had confused defendant with R.R.; contended that the jury could infer from R.R.'s touching of C.C. that he also likely touched S.G.; and that R.R. was the person who had downloaded the pornography onto the computer, not defendant. The court denied the motion, finding that defendant had not overcome the presumption of irrelevance attached to evidence of C.C.'s sexual victimization by another person.

¶ 43 Defense counsel did not make a separate argument regarding alternate suspect evidence before the trial court and the court did not rule on alternate suspect issues. However, in the denial of the rape shield motion, the court stated that

[i]t's one thing to question [R.R.] on the stand about viewing that child pornography and whether he was the one who had downloaded it and put it on the computer himself. And certainly *if the defense is going to go there, we need some notice because I'll be appointing counsel for [R.R.] before that happens.*

(Emphasis added). Defense counsel made no further arguments regarding R.R. as an alternate suspect. But at trial, defense counsel questioned witnesses about R.R.'s access to the computers that contained child pornography in an attempt to raise reasonable doubt as to the exploitation charges, and argued in closing that defendant was not the only person with access to the computers.

¶ 44 We conclude the trial court did not abuse its discretion in excluding evidence of C.C.'s allegation against R.R. The trial court found: (1) there was "no evidence whatsoever to substantiate piercing of the rape shield law" as to S.G., because any speculation or inference that because R.R. may have assaulted C.C., he must or may have assaulted S.G. was improper; (2) there was no connection or relevance between R.R. assaulting C.C. and the child pornography charges; (3) if defendant wanted to ask R.R. about the pornography he saw on one of the computers in his home, counsel could do so if R.R. had counsel; (4) the allegation against R.R. provided no basis for an inference that C.C. gained her sexual knowledge or knowledge of anatomy from that act because C.C. was touched at night and did not see R.R.'s anatomy; (5) the allegations against defendant involved sexual touching and exploitation during daylight hours, in the basement, in front of a computer where defendant sometimes exposed himself, and were therefore distinct from the single allegation that R.R., fully clothed, had touched C.C. at night, in the dark, in her bedroom; and (6) neither C.C. nor S.G. demonstrated any confusion as to the identity of the person who exploited them and sexually abused them in front of a computer, and C.C. was able to clearly distinguish between R.R.'s alleged actions and the abuse she attributed to defendant.

¶ 45 These findings are supported by the record and the court's ruling is not manifestly arbitrary, unreasonable, or unfair. Hence, the trial court did not abuse its discretion in concluding that defendant's offer of proof was insufficient to pierce the rape shield statute. It fits no stated exception and was not otherwise relevant to a material issue in the case. *See Kyle*, 111 P.3d at 497.

¶ 46 We also perceive no abuse of discretion in the court's ruling that effectively excluded defendant's alternate suspect evidence. Defendant did not show that R.R. committed an act directly connected to the crimes charged concerning S.G., and the sexual assault charges concerning C.C. were not being retried. Further, the descriptions of the suspects were not similar; C.C. was certain that the assault occurred only once; and she specifically identified defendant, not

R.R., concerning the exploitation charges. *See Salazar,* ¶ 26.

## IV. CRE 404(b) Evidence

¶ 47 Defendant contends that the trial court erroneously permitted the prosecution to introduce CRE 404(b) evidence related to acts for which he had been acquitted in Boulder County. He further asserts that the facts of the abuse he committed against C.C. underlying the Boulder County case should not have been admitted as CRE 404(b) evidence in his Arapahoe County retrial because he was not charged with sexual assault on C.C. on retrial. We disagree.

### A. Standard of Review

¶ 48 The trial court has substantial discretion in deciding questions concerning the admissibility of evidence. *People v. Elie,* 148 P.3d 359, 362 (Colo.App.2006) (citing *People v. Quintana,* 882 P.2d 1366 (Colo. 1994)). We review a trial court's evidentiary rulings for an abuse of discretion and absent a showing of an abuse of that discretion, we will affirm its evidentiary rulings. *Id.*

### B. Applicable Law

¶ 49 Evidence of a defendant's other acts is generally inadmissible to demonstrate a defendant's bad character or propensity to commit crimes. CRE 404(b). However, such evidence may be admissible for other purposes such as motive, intent, or identity. § 16–10–301(3), C.R.S.2013; CRE 404(b); *People v. Munoz,* 240 P.3d 311, 319 (Colo. App.2009).

¶ 50 A four-part analysis determines whether other acts are admissible for other purposes: (1) whether the evidence relates to a material fact; (2) whether the evidence is logically relevant; (3) whether the logical relevance of the evidence is independent of the inference that the defendant committed the charged crime because of the likelihood he acted in conformity with his bad character; and (4) whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice. *Munoz,* 240 P.3d at 319 (citing *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990)).

### C. Application

¶ 51 To the extent defendant argues that evidence of the acts underlying his Boulder County case were improperly admitted because he was acquitted of the Boulder charges, we reject the argument. First, the record shows that defendant did not go to trial in Boulder County but instead pleaded guilty to attempted sexual assault upon C.C. Second, even if he had been acquitted, that fact would not automatically preclude a trial court from admitting evidence of the underlying facts of the case. *See, e.g., Kinney v. People,* 187 P.3d 548, 554 (Colo.2008); *People v. Wallen,* 996 P.2d 182, 185 (Colo.App.1999).

¶ 52 To the extent defendant argues that evidence from his Boulder County case was improperly admitted in his Arapahoe County retrial because he was acquitted of sexual assault of C.C. at his first trial, thereby making the Boulder case irrelevant, we also disagree. The prosecution proffered the evidence from the Boulder County case, namely C.C.'s interviews in 2004 and the child pornography found on defendant's Boulder computers, to show proof of identity, absence of mistake or accident, common plan or scheme, and also to demonstrate that defendant's conduct was for the purpose of sexual arousal, gratification, or abuse. *See* CRE 404(b); § 16–10–301(3).

¶ 53 The trial court considered the issue by type of evidence. It first considered the evidence of the child pornography found on the Boulder computers and concluded that the evidence was relevant to show absence of mistake or accident and defendant's intent and knowledge. The court specifically found that the Boulder pornography was logically relevant to the material fact of whether defendant knowingly possessed child pornography, that it was independent of any inference of defendant's bad character because it was relevant to similar facts charged in the case, and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice because the jury had already seen the child pornography on the Arapahoe County computers and seeing more pornography would not produce a "wave effect" that would so "overwhelm" the

jury that it would convict him based on the CRE 404(b) evidence or emotion.

¶ 54 We conclude these findings are supported by the record, the court applied the appropriate legal standards, and its ruling is not arbitrary, unreasonable, or unfair. Hence, the admission of the child pornography found on the Boulder computers was proper.

¶ 55 Next, the trial court considered C.C.'s 2004 interviews that contained both sexual assault and sexual exploitation allegations against defendant. First, the court found that, under *People v. Conley*, 804 P.2d 240 (Colo.App.1990), clear and convincing evidence showed that defendant committed the acts alleged by C.C. in the 2004 interviews. It next found that any danger that defendant was being retried on acquitted conduct could be overcome with a proper limiting instruction.

¶ 56 The court then conducted a thorough *Spoto* analysis and found that the evidence was relevant to material facts going to the sexual exploitation and indecent exposure counts concerning C.C., and the similarities between what C.C. alleged happened in Boulder and Arapahoe Counties. It also found that the evidence was logically relevant and independent of a bad character inference because it tended to show a common plan or scheme in that defendant committed the same acts in both locales. Lastly, the court found that the probative value of the evidence was not outweighed by the danger of unfair prejudice. The court also gave a detailed limiting instruction at the time the evidence was admitted and at the close of trial.

¶ 57 Again, because these findings and analyses are supported by the record and the court employed the proper legal test for admission of the 2004 interviews, we perceive no abuse of discretion in admitting the evidence under CRE 404(b). Contrary to defendant's argument, the fact that the court did not extensively detail similarities between the charged crimes and the CRE 404(b) evidence, as the trial court did in *Conley, id.* at 244, is insignificant. Similarity is only one factor to consider, trial courts need not make

such extensive findings, and *Conley* does not require them. This is especially true in instances where, as here, the court had already ruled on the reliability of the evidence in another context and referenced that ruling.

¶ 58 Moreover, the court repeatedly noted the similarities between C.C.'s allegations in the Boulder case and S.G.'s allegations in this case—both girls consistently asserted that defendant took them to the basement to watch pornography and then made them undress and took pictures of them with his computer, sometimes touching their vaginas, and then put those pictures on the internet. The fact that the similarities are not extensively noted in a written order does not mean that the court's findings are somehow improper or unfounded.

## V. Denial of Fourth Continuance

¶ 59 Defendant next asserts that the trial court erred in denying his motion for a fourth continuance because his expert did not have enough time to review the forensic evidence or investigate the findings, and his counsel needed more time to properly prepare for trial. We disagree.

### A. Standard of Review

¶ 60 Whether to grant a motion to continue a trial " 'is addressed to the sound discretion of the trial court, and [its] ruling will not be disturbed in the absence of an abuse of discretion.' " *People v. Alley,* 232 P.3d 272, 274 (Colo.App.2010) (quoting *People v. Hampton,* 758 P.2d 1344, 1353 (Colo.1988)). A defendant must demonstrate actual prejudice arising from the court's denial of the continuance. *Id.* (citing *People v. Denton,* 757 P.2d 637, 638 (Colo.App.1988)).

### B. Application

¶ 61 This case was remanded to the trial court in November 2008. A public defender was appointed for defendant, and in January 2009, defendant's counsel obtained a continuance to prepare for trial. In May 2009, the court granted a second motion to continue. Sometime thereafter, defendant informed the court he was seeking private counsel. But in July, a new public defender

was appointed. This attorney, who ultimately represented defendant at trial, moved for a third continuance to give her time to prepare and to bring co-counsel up to speed. Over the prosecution's objection, the court granted a third continuance and set the trial for April 26, 2010.

¶ 62 Before and after the court granted the third continuance, the prosecution and defense extensively litigated pretrial issues and engaged in thorough discovery. In January 2010, however, the prosecutor became concerned that defense counsel had not yet disclosed an expert computer analyst, and he informed the court that he feared a fourth motion for continuance would be forthcoming. Defense counsel assured the court she was aware of the procedural requirement that she disclose an expert and any reports thirty days before trial.

¶ 63 But it was not until March 29, 2010, that defense counsel informed the prosecution of her intent to hire and endorse the same expert in computer forensics that had testified for the defense in defendant's first trial. The prosecutor then sent defense counsel an email on April 1, 2010, detailing the steps necessary for the expert to receive the computer files in this case.

¶ 64 On April 14, twelve days before trial, defense counsel endorsed the expert. The prosecutor did not object to the late disclosure.

¶ 65 On April 21, defendant filed a fourth motion to continue the trial, and the court held a hearing on April 23. As grounds for the continuance, defense counsel stated that the expert would not have sufficient time to prepare for trial and inform defense counsel of his findings so that counsel could incorporate them into the defense; the defense needed additional time to locate R.R., who would be proffered as an alternate suspect; defense counsel had been overwhelmed in preparing for other trials; and counsel needed more time to gather defendant's employment records to establish a partial alibi for some of the child pornography computer downloads.

¶ 66 The prosecutor objected, citing the above timeline. In addition, the prosecutor informed the court that the expert defense counsel had retained for the second trial was the same expert presented in the first trial and that the computer data for the second trial came from the same hard drives available at the first trial, that is, the data had not changed. The prosecutor also stated that the expert was familiar with the procedure to obtain computer evidence from law enforcement, he had been the expert in this case in 2005, he had served as an expert in multiple trials since then, and he had formerly been a federal investigator regarding internet crimes. The prosecutor also had provided the appropriate documentation to the sheriff's office and suggested the defense expert pick up the evidence, but the expert had delayed doing so.

¶ 67 In denying the motion, the court stated that defense counsel had "dropped the ball" in timely procuring and preparing an expert. It found that any alternate suspect and alibi theory was a weak and incomplete defense and that defense counsel could not assure the court that having additional time would allow defendant to locate R.R.

¶ 68 Defense counsel renewed her motion to continue on the day of trial, citing an error in discovery. Defense counsel asserted that the prosecution had not given her complete discovery because one of the several discs of child pornography was incorrectly copied from a DVD to a CD, resulting in incomplete information. Defense counsel stated she had discovered this issue after interviewing the prosecution's expert over the weekend before trial.

¶ 69 But defense counsel admitted that her own expert had been working nonstop, that he now had all the pertinent information, and that he would likely be able to generate a report by that afternoon. The court again denied the motion to continue, finding that the "issues that have been raised by the defense [do not] rise to the level of granting a continuance."

¶ 70 We perceive no abuse of discretion by the court. Defense counsel had been put on notice of the applicable deadlines, the expert had received all the necessary information and was able to work on it "nonstop"; the expert indicated he could produce a report as

early as that afternoon and actually produced one, the expert testified at trial, and the defense, with three previous continuances, had ample time to locate R.R. and procure defendant's employment records. Nor is there any indication that defense counsel was unprepared for trial. Hence, defendant has shown no actual prejudice resulting from the court's ruling.

## VI. Cumulative Error

¶ 71 Defendant contends that the cumulative effect of the errors alleged above deprived him of his constitutional rights to due process and a fair trial.

¶ 72 The doctrine of cumulative error requires that numerous errors be committed, not merely alleged. *People v. Whitman*, 205 P.3d 371, 387 (Colo.App.2007). A conviction will not be reversed if the cumulative effect of any errors did not substantially prejudice defendant's right to a fair trial. *Id.*

¶ 73 Because we have found no error, we reject defendant's final contention. *See, e.g., People v. Reynolds*, 252 P.3d 1128, 1134 (Colo.App.2010).

¶ 74 The judgment is affirmed.

JUDGE RICHMAN and JUDGE ASHBY concur.